**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

     **vs.**

ROY JOHNSON,

              **Defendant.**

                                         **8:25-CR-43**
                                         **(MAD)**

**APPEARANCES:**

**OFFICE OF THE UNITED STATES ATTORNEY**
14 Durkee Street - Room 340
Plattsburgh, New York 12901
Attorney for the Government

**OFFICE OF MICHAEL SPANO**
220 South Warren Street
Syracuse, New York 13202
Attorney for Defendant

**OF COUNSEL:**

**CARLING DUNHAM, AUSA**

**MICHAEL SPANO, ESQ.**

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

On October 18, 2023, the Government filed a criminal complaint against Defendant Roy Johnson charging him with one count of transportation of child pornography in violation of 18 U.S.C. § 2252(a)(1) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). *See* Dkt. No. 1. Defendant was arrested on November 3, 2023, pursuant to an arrest warrant signed by Magistrate Judge Gary L. Favro. *See* Dkt. No. 4. Magistrate Judge Favro ordered Defendant's detention as a danger to the community. *See* Dkt. No. 15.

1

On January 29, 2025, a grand jury returned a two-count indictment for possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). *See* Dkt. No. 36. On February 13, 2025, Defendant entered a not guilty plea to the indictment. *See* Text Minute Entry 02/13/2025. On December 11, 2025, Defendant filed a *pro se* motion to suppress, *see* Dkt. No. 56, which the Court struck from the docket because Defendant is represented by counsel. *See* Dkt. No. 57.

Trial is scheduled to begin on April 6, 2026. *See* Dkt. No. 59. Presently before the Court is Defendant's counseled motion to suppress. *See* Dkt. No. 60. The Government responded in opposition. *See* Dkt. No. 63.

For the following reasons, the motion to suppress is denied.

## II. BACKGROUND

The following recitation of facts is derived from Defendant's motion and attached exhibits and the Government's response. *See* Dkt. Nos. 60, 63.

This case began nearly eight years ago. On April 30, 2018, the National Center for Missing and Exploited Children received a report, or CyberTip, from the online platform Tumblr regarding "apparent child pornography." Dkt. No. 63 at 3; *see also* Dkt. No. 60-1 at 2. The information from Tumblr provided the following user information:

> Email Address: roylovesanal@yahoo.com
> Screen / User Name: luv28psy
> Profile URL: luv29psy.tumblr.com
> IP Address: 2600::1017:b016:f78a:8d3d:2ec:67b2:4ecb

Dkt. No. 63 at 3. The CyberTip provided two additional IP addresses: 70.209.141.243 and 67.249.19.102. *See* Dkt. No. 60-1 at 2. Law enforcement connected two of the IP addresses with Verizon Wireless and one with Charter Communications. *See* Dkt. No. 63 at 3. Law enforcement

issued subpoenas to both companies related to the IP addressed, which returned information identifying Roy Johnson as the subscriber and provided a cell phone number. *See* Dkt. No. 60-1 at 2-3. Law enforcement issued another subpoena related to the cell phone number which returned two mailing addresses for Roy Johnson. *See* Dkt. No. 63 at 4. According to the Government, based on law enforcement surveillance, one address was where Roy Johnson lived with his then-girlfriend, and the other address was where he lived alone. *See id.*

On August 1, 2018, the case was assigned to New York State Police Investigator Dean White. *See* Dkt. No. 60-1 at 3.[1] On September 13, 2018, Investigator White applied for a search warrant from a town magistrate in the Town of Colton, New York. Defendant attaches the search warrant application as an exhibit to his motion, which related to Defendant's person, home, and vehicles. *See* Dkt. No. 60-4. The search warrant was executed the next day. *See* Dkt. No. 60-1 at 4. The Government states that Defendant was not at his home when the warrant was executed, on

---

[1] In Defendant's motion, he notes that Investigator White took over the case in August 1, 2018, and then states that Investigator White applied for a search warrant on September 13, 2018. *See* Dkt. No. 60-1 at 3. The Government provides additional information related to Defendant's activities between those two dates. *See* Dkt. No. 63 at 4-6. The Government details conduct attributed to Defendant wherein Defendant posted an online advertisement seeking companionship and Investigator White posed as a 14-year-old girl. *See id.* The Government contends that between August 15, 2018, and March 7, 2019, Defendant messaged back and forth with the 14-year-old girl, which "involved sexually explicit messages detailing what sex acts the defendant would perform on the child as well as asking the child for sexually graphic photographs." *Id.* a 5. Defendant also sent photographs of his face and vehicles in the messages. *See id.* However, none of this information was included in Investigator White's search warrant applications. *See* Dkt. Nos. 60-4, 60-5. "It is a truism that 'a search warrant is valid only if probable cause has been shown to the magistrate and that an inadequate showing may not be rescued by post-search testimony on information known to the searching officers at the time of the search.'" *Illinois v. Gates*, 462 U.S. 213, 294, n.6 (1983) (collecting cases). The Court, therefore, does not consider this additional evidence in determining whether the search warrants were sufficiently particular and supported by probable cause.

September 14, 2018, but that a neighbor informed Defendant of law enforcement's presence. *See* Dkt. No. 63 at 7. Defendant called New York State Police and agreed to go to the station to speak with law enforcement. *See id.* Defendant arrived at the station in a Pontiac Grand Prix. *See id.* Investigator White then applied for an amended search warrant which provided specific information about Defendant's vehicles—a Dodge Ram and a Pontiac Grand Prix *See* Dkt. No. 60-5. Defendant states that the only difference between the original and amended search warrant applications is the more descriptive language concerning his vehicles. *See* Dkt. No. 60-1 at 5.

When Defendant was arrested, he provided Investigator White with his phone number and email addresses. *See* Dkt. No. 63 at 7. According to the Government, "[w]hen Inv[estigator] White told the defendant that he was going to seize his phone, the defendant stated that he wanted to talk to an attorney and all questioning stopped." *Id.* at 8.

The Government states that law enforcement seized two phones pursuant to the search warrants: one found on Defendant's person, a Samsung Galaxy Note 8; and one in Defendant's Pontiac, a Samsung Galaxy Note 5. See id.; *see also* Dkt. No. 60-1 at 4-5; Dkt. No. 60-6. Defendant concedes that "[i]mages of child sexual abuse material . . . were recovered from both phones." Dkt. No. 60-1 at 5. The Government specifies that "Inv[estigator] White found approximately two images of child pornography on the Samsung Galaxy Note 8. Inv[estigator] White found approximately eight images of child pornography on the Samsung Galaxy Note 5." Dkt. No. 63 at 8.

Defendant was indicted in St. Lawrence County, New York, for twenty-three counts of possessing a sexual performance of a child in violation of New York State Penal Law § 263.16.

*See* Dkt. No. 60-1 at 5; *see also* Dkt. No. 60-7.  On July 23, 2019, a suppression hearing was held before a state court judge, at which time the prosecutor called one witness: Investigator White. *See* Dkt. No. 60-1 at 5.  Defendant contends the prosecutor "did not offer into evidence the search warrant, the search warrant application, the amended search warrant[,] or the amended search warrant application."  *Id.*  Defendant attaches a copy of the hearing transcript to his present motion.  *See* Dkt. No. 60-8.

As noted in the transcript, the prosecution did offer, and the state court judge accepted into evidence, a copy of the original search warrant.  *See id.* at 22-24.  The prosecutor did not offer into evidence the original search warrant application or the amended documents.  Defendant is correct that the state "court granted suppression of all evidence obtained from the recovered cell phones."  Dkt. No. 60-1 at 5-6.  The state court judge concluded at the end of the suppression hearing that "the [prosecutor] had an obligation to go forward with the presentation of evidence about the warrant.  The warrant application, any affidavits, testimony by the officer[] as to what was presented to the judge, any questions asked by the judge, and . . . just presenting the warrant itself doesn't answer the question."  Dkt. No. 60-8 at 35.

St. Lawrence County brought a second indictment against Defendant, which the state court dismissed because suppression of the evidence was mandated based on "the doctrine of collateral estoppel."  Dkt. No. 60-1 at 6; *see also* Dkt. No. 60-9.

Defendant contends the present federal indictment is based on the images recovered from Defendant's cell phone that were suppressed in state court.  *See* Dkt. No. 60-1 at 6.  Defendant argues that the search warrants are invalid and suppression of the evidence is required because the

5

search warrants (1) lacked particularity concerning the specific alleged crimes; (2) failed to contain a temporal limitation; (3) did not identify the devices to be seized and searched; (4) lacked probable cause as to the Pontiac vehicle; and (5) lacked probable cause as to the cell phones. *See id.* at 1.

The Government disagrees on each issue. *See generally* Dkt. No. 63. It also argues that if the search warrants are invalidated, the law enforcement officers acted in good faith such that the evidence should not be suppressed. *See id.* at 20-23.

## II. DISCUSSION[2]

"Under the Fourth Amendment, warrants may be issued only 'upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020) (quoting U.S. CONST. amend. IV). The purpose of the particularity requirement is "'to prevent general searches.'" *Id.* (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). "'By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.'" *Id.* (citation omitted). "'A failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance

---

[2] It is a "longstanding 'rule in this Circuit that collateral estoppel never bars the United States from using evidence previously suppressed in a state proceeding in which the United States was not a party." *United States v. Jones*, 43 F.4th 94, 103, n.7 (2d Cir. 2022) (quoting United States v. Miller, 116 F.3d 641, 663 (2d Cir. 1997)).

that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary.'" *Id.* (quoting *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992)).

"To satisfy the Fourth Amendment's particularity requirement, a warrant must meet three criteria: (1) it 'must identify the specific offense for which the police have established probable cause'; (2) it 'must describe the place to be searched'; and (3) it 'must specify the items to be seized by their relation to designated crimes.'" *Id.* (quoting *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013)). "A warrant is facially unconstitutional if it fails to comply with any of these requirements." *Id.*

### A.      Particularity of Alleged Crimes

Defendant first argues that the search warrants are overly broad and violative of the Fourth Amendment because they do not "name any federal or state crime." Dkt. No. 60-1 at 7. The Government contends that, because the search warrants reference a specific article of New York State's Penal Code, it was sufficiently specific. *See* Dkt. No. 63 at 9-13.

The search warrant application states that "the property referred to and sought to be seized, searched, examined, and held . . . [i]s believed to have been used to commit an offense against the laws of this sate, to wit, violations of Articles 263 of the Penal Law of the State of New York; and . . . [c]onstitutes evidence and tends to demonstrate that an offense was committed in this state, to wit, violations of Articles 263 of the Penal Law of the State of New York[.]" Dkt. No. 60-4 at 1. The actual search warrant states that the property subject to the warrant "is believed to contain evidence that will constitute, substantiate or support violations of Article 263 of the Penal Law of the State of New York[.]" *Id.* at 10. For example, the property subject to the search included

7

"[a]ny internet capable device, such as a cell phone, tablet, smartphone, gaming system that allows access to the internet and allows for transmission of data in violation o[f] articles 263 of the New York State Penal Law." *Id.* at 11. It also listed "[a]ny audio or video cassette tape recordings, books, magazine, periodicals, or other recorded printed material, the possession of which constitutes a violation of Article 263 of the Penal Law of the State of New York." *Id.* The amended search warrant states the same. *See* Dkt. No. 60-5 at 10-11. As the Government explains, Article 263 concerns "the sexual abuse of a child—using, promoting, possessing, or facilitating what we commonly refer to as child pornography." Dkt. No. 63 at 12.

Defendant relies on three cases in support of his argument that the search warrant's reference to Article 263 is insufficient to meet the particularity requirement: *United States v. Galpin*, 720 F.3d 436 (2d. Cir. 2013); *United States v. Rosa*, 626 F.3d 56 (2d Cir. 2010); and *United States v. Santiago*, 135 F.4th 1235 (10th Cir. 2025). *See* Dkt. No. 60-1 at 7-8.

The cases relied on by Defendant, as argued by the Government, are distinguishable. *See* Dkt. No. 63 at 9-11.

In *Galpin*, "[t]he district court determined, and the government d[id] not dispute, that insofar as the warrant generally authorized officers to search Galpin's physical property and electronic equipment for evidence of violations of 'NYS Penal Law and or Federal Statutes,' the warrant violated the Fourth Amendment's particularity requirement." *Galpin*, 720 F.3d at 447 (citing, *inter alia*, *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992) ("Mere reference to 'evidence' of . . . general criminal activity provides no readily ascertainable guidelines for the

executing officers as to what items to seize. . . . [A]uthorization to search for 'evidence of a crime,' that is to say, any crime, is so broad as to constitute a general warrant").

In *Rosa*, "the search warrant itself did not incorporate any supporting documents, or set forth the nature of the suspected criminal activity." *Rosa*, 626 F.3d at 58. "[S]ection A of the search warrant application stated that the property to be searched was evidence of three New York criminal offenses—two sex offenses, one of which related to crimes involving child pornography, and one firearms offense." *Id.* at 58-59. "Specifically, the application listed the suspected violation of Articles 130 ("Sex offenses"), 263 ("Sexual performance by a child"), and 265 ("Firearms and other dangerous weapons") of New York State's Penal Law." *Id.* at 59 n.1. The Second Circuit, relying on the Supreme Court's decision in *Groh v. Ramirez*, 540 U.S. 551 (2004), held that courts "may no longer rely on unincorporated, unattached supporting documents to cure an otherwise defective search warrant"; therefore, "the warrant fail[ed] for lack of particularity." *Id.* at 64. Therefore, because the search warrant "did not incorporate any supporting documents," including the application which contained references to specific penal law provisions, the warrant was held to be invalid. *Id.* at 58.

In *Santiago*, the search warrant "list[ed] a variety of specific places within the iPhone that should be searched but then says, 'as well as any other information within said phone that may be deemed evidence that a crime has been or is about to be committed.'" *Santiago*, 135 F.4th at 1239. The Tenth Circuit reversed the district court's denial of a motion to suppress because "[t]he state search warrant does not attempt to narrow this instruction by mentioning the crimes with which Mr. Santiago has been charged." *Id.*

Here, the search warrant itself stated the article of the penal law for which law enforcement was permitted to search for related evidence.  The penal law provision was not in only an unincorporated, unattached document.  *See Rosa*, 626 F.3d at 58-59.  Nor did the search warrant (or application) reference, in general, "a crime," *Santiago*, 135 F.4th at 1239, or "NYS Penal Law and or Federal Statutes."  *Galpin*, 720 F.3d at 447.

The case cited by the Government is more akin to the situation presented in this case.  *See* Dkt. No. 63 at 9-11 (citing *United States v. Wallace*, No. 1:24-CR-411, 2025 WL 1435066, *2 (S.D.N.Y. May 19, 2025)).  In *Wallace*, "[t]he Search Warrant clearly identified the specific offenses as violations of 18 United States Code Sections 1201 (kidnapping), 1591(a) (sex trafficking of children or by force, fraud, or coercion), 2552A (child pornography), and 2 (aiding and abetting those crimes)."  *Wallace*, 2025 WL 1435066, at *4.  The court noted that "[w]hile it is true that the Search Warrant does not provide as much detail of the purported violations as the [] Affidavit in support of the application and did not attach or incorporate the Affidavit, the inclusion of the specific statutory violations is sufficient."  *Id.*; *see also Galgano v. Cnty. of Putnam, New York*, No. 16-CV-3572, 2024 WL 1623401, *84 (S.D.N.Y. Apr. 15, 2024) ("While [the p]laintiff is correct that the relevant offenses are referred to in a general manner as a 'conspiracy to bribe, intimidate, and tamper with a witness,' a warrant need not refer to the title, chapter, and section of the statute defining the suspected crimes to be sufficiently particular").

As the Government states, in 2018, Article 263 contains seven crimes.  *See* Dkt. No. 63 at 11.  This is not a case where, for example, "the warrant was insufficiently particular to satisfy the Fourth Amendment because the warrant allowed officers to seize evidence of 47 different crimes

within Articles 130, 235, 260, 263 of the New York Penal Law, many of which were unrelated to the evidence in the warrant application." *United States v. Dumas*, No. 20-3408, 2022 WL 678910, *1 (2d Cir. Mar. 8, 2022). The Court does not find the search warrant's reference to Article 263 so overly broad as to violate the rule of particularity. *See United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 308 (S.D.N.Y. 2018) (denying motion to suppress where the defendant argued the search warrant's "'failure to specifically list insider trading as the type of securities fraud under investigation' constitutes a lack of particularity" because "while securities fraud is susceptible to different theories of proof, it is by no means so broad a statute that it provides no limitation to law enforcement officers in executing a search warrant") (citation omitted).

As such, this aspect of Defendant's motion is denied.

## B.    Temporal Particularity

Defendant argues the evidence must be suppressed because the search warrants did not contain a temporal limitation meaning that "[t]he police were free to examine every file on the recovered devi[c]es without regard to any timeframe." Dkt. No. 60-1 at 10. Defendant contends this issue is of even greater concern in the context of electronic data because of cell phones' immense storage capacity. *See id.* at 10-11.

The Government argues the search warrant was sufficiently limited in its scope by linking the evidence to be seized to Article 263 offenses. *See* Dkt. No. 63 at 15. The Government states there is no brightline temporal limitation rule in the Second Circuit, and that, regardless, law

11

enforcement acted in good faith. *See id.* at 13. The Government also, again, relies on the decision in *Wallace*, wherein the court "did not decide particularity regarding the time limitations because it held that the officers acted in good faith." *Id.* at 14 (citing *Wallace*, 2025 WL 1435066, at *6).

"[N]either the Supreme Court nor the Second Circuit has categorically required temporal limits for [digital] accounts." *United States v. Valentin*, No. 23-CR-292, 2025 WL 1519116, *13 (E.D.N.Y. May 28, 2025) (collecting cases). "In the absence of categorical rules, whether a time limit is required depends on a warrant-by-warrant inquiry into all the factors bearing on probable cause, such as the nature of the offense under investigation, the nature of the material sought, and the duration of the warrant." *Id.* (collecting cases); *see also United States v. Salaman*, 742 F. Supp. 3d 221, 234 (D. Conn. 2024) ("Some courts have suggested that a lack of temporal limitations in a search warrant may reinforce a conclusion that it is insufficiently particular. . . . But temporal limitations are just one factor a court may consider and are not the 'sole factor.' . . . None of the cases cited by [the defendant] stand for the proposition that a lack of temporal limitations *alone* renders a warrant insufficiently particular where the warrant contains other limiting language to guide law enforcement review").

Here, Defendant is correct that the search warrants contain no temporal limitation. *See* Dkt. Nos. 60-4, 60-5. In theory, then, law enforcement would have been permitted to search through Defendant's phoned from the first day he obtained them to the day they were seized. Such a broad search could violate "the Fourth Amendment['s] protect[ion] against 'wide-ranging exploratory searches' unsupported by probable cause[.]" *Rosa*, 626 F.3d at 61 (citation omitted).

12

However, because the search warrants satisfy the three particularity requirements set forth by the Second Circuit, there is no temporal particularity requirement, and, as explained later, the good faith exception applies, the Court denies Defendant's motion on this issue. *Cf. United States v. Sinisterra*, No. 3:21-CR-00156, 2024 WL 897935, *6 (D. Conn. Mar. 1, 2024) ("'[A] search warrant does not necessarily lack particularity simply because it is broad'") (quoting *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018)).

## C.    Particularity of Devices

Defendant argues that the seizure of his cell phones was unconstitutional because the search warrants did not "specifically identify[] the devices . . . ." Dkt. No. 60-1 at 11. Defendant asserts that "the applications and search warrants failed to particularly describe the cell phones that ultimately contained" the child pornography. *Id.* at 12.

The Government disagrees and avers the search warrants were sufficiently limited by defining a "computer" as a device which would store, retrieve, and community data; identifying specific locations where the phones could be found—Defendant's home, person, or vehicles; and linking the sought evidence to violations of Article 263. *See* Dkt. No. 63 at 15-16.

"Where the property to be searched is a hard drive or other electronic media, 'the particularity requirement assumes even greater importance[.]'" *United States v. Ray*, 541 F. Supp. 3d 355, 391 (S.D.N.Y. 2021) (quoting *Ulbricht*, 858 F.3d at 99). This is because "[t]he seizure of a computer hard drive, and its subsequent retention by the government, can . . . give the government possession of a vast trove of personal information about the person to whom the drive

belongs, much of which may be entirely irrelevant to the criminal investigation that led to the seizure." *Id.* (citation and quotation marks omitted); *see United States v. Ganias*, 824 F.3d 199, 217 (2d Cir. 2016). "A warrant is overbroad if its descriptions of the objects to be seized 'is broader than can be justified by the probable cause upon which the warrant is based.'" *United States v. Green*, No. 1:18-CR-121, 2020 WL 9459171, *9 (W.D.N.Y. Apr. 13, 2020), *R. & R. adopted*, 2021 WL 1856949 (W.D.N.Y. May 10, 2021) (citing *Galpin*, 720 F.3d at 446).

Courts have concluded that a search warrant's reference to "all 'electronic devices" and "all cellphones," *Ray*, 541 F. Supp. 3d at 391; "any evidence related to the commission of narcotics offenses, including, *inter alia*, controlled substances, cell phones or smart phones," *Green*, 2020 WL 9459171, at *8; and "[a]ll cell phones and cell phone(s) data contained therein" is "adequate to allow the searching agents to know what could be seized as within the scope of the warrant." *United States v. Langston*, No. 3:20-CR-58, 2023 WL 4935984, at *1 (D. Conn. Aug. 2, 2023) (citing *United States v. Conley*, 342 F. Supp. 3d 247, 270 (D. Conn. 2018)).

Here, Defendant argues that the warrants lacked descriptions of "the cell phones that ultimately contained" the child pornography, but Defendant has not presented any case law which requires a search warrant to identify the specific make, model, and year of a defendant's cell phone. Dkt. No. 60-1 at 12. "[A] warrant need not describe the items to be seized in such detail as to eliminate the officer's discretion completely." *United States v. Robinson*, No. 16-CR-545, 2018 WL 5928120, *7 (E.D.N.Y. Nov. 13, 2018) (*United States v. Riley*, 906 F.2d 841, 845 (2d Cir. 1990)). The search warrants and the applications limited the items that could be seized and searched to "[a]ny internet capable device, such as a cell phone, tablet, smartphone, gaming

system that allows access to the internet and allows for the transmission of data in violation of article[] 263 of the New York State Penal Law" which could be found only on Defendant's person or in his home or vehicles. Dkt. No. 60-4 at 2. This is not overly broad because it is "sufficiently specific to permit the rational exercise of judgment by the executing officers in selecting what items to seize." *United States v. Liu*, 239 F.3d 138, 140 (2d Cir. 2000). Therefore, Defendant's motion on this issue is denied.

### D.    Probable Cause Related to Defendant's Cell Phones and Pontiac Vehicle

Defendant argues that law enforcement failed to establish a nexus between the Tumblr account and Defendant's cell phones because the search warrant application "relied on ambiguous IP address information, contained inconsistent addresses, lacked temporal specificity[,] and was based on a si[ngle] image of suspected" child pornography. Dkt. No. 60-1 at 13. The Government contends the facts set forth in Investigator White's search warrant application "more than support a probable cause determination that the defendant possessed evidence of violations of Article 263." Dkt. No. 63 at 20.

Defendant states that "[o]n September 14, 2018, [he] drove his 2005 white Pontiac to the New York State Police barracks in Canton, the same day the search warrant was executed at his home." Dkt. No. 60-1 at 12. He contends that when the search warrant was amended to specify the makes and models of Defendant's vehicles, including the Pontiac, no amendments were made to the search warrant application related to the Pontiac. *See id.* at 12-13. Defendant argues that "[t]he warrant application offered no reasoning as to why law enforcement may find evidence related to [child pornography] in his 2005 Pontiac[.]" *Id.* at 13. Defendant avers that his

15

ownership of the vehicle is not enough to establish probable cause for its search related to the alleged criminal activity.  *See id.*

The Government disagrees, stating "[t]he idea that cell phones containing evidence of child pornography offenses in violation of Article 263 were in the defendant's vehicle is exactly the type of common sense that is permitted" to support a finding of probable cause.  Dkt. No. 63 at 17.  Quoting *United States v. Zeitlin*, 23-CR-0419, 2024 WL 3429506, at *4 (S.D.N.Y. Jul. 15, 2024), the Government contends "it is [] not groundbreaking to assert that the defendant's cell phones would be on his person, at his residence, or in his vehicles."  *Id.*

"A search warrant must be supported by probable cause."  *United States v. Rinsch*, 807 F. Supp. 3d 238, 245 (S.D.N.Y. 2025).  "'[P]robable cause is not a high bar.'"  *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)).  "To obtain a warrant, the Government must only establish a 'fair probability that contraband or evidence of a crime will be found in a particular place.'"  *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

"Whether there is probable cause to support the issuance of a search warrant depends on the 'totality of the circumstances.'"  *United States v. Gatto*, 313 F. Supp. 3d 551, 558 (S.D.N.Y. 2018) (quoting *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993)).  "The issuing judicial officer must [decide] . . . whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id.* (citation in footnote and quotation marks omitted).  "The probable cause standard does not demand any showing that a good-faith belief be correct or more likely true than false."  *Id.*

16

(quoting *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007)) (quotation marks omitted).  "Rather, '[i]t requires only such facts [that] make wrongdoing or the discovery of evidence [] probable.'" *Id.* (citation in footnote omitted).

"Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a 'fluid concept' that is not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Jones*, 43 F.4th 94, 109 (2d Cir. 2022) (quoting *Wesby*, 583 U.S. at 57).  "A showing of nexus [between the evidence and the alleged crime] does not require direct evidence and may be based on 'reasonable inference' from the facts presented based on common sense and experience." *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (citations and quotation marks omitted).

As explained, Investigator White affirmed in his warrant applications that he received a CyberTip from the National Center for Missing and Exlpoited Children concerning a file uploaded to Tumblr that contained possible child pornography.  *See* Dkt. No. 60-4 at 8. Investigator White stated that the e-mail address associated with the Tumblr account was traced to three IP addresses that were subscribed all to by Defendant.  *See id.*  Defendant's phone number and physical addresses were identified as a result of subpoenas to internet companies.  *See id.* Investigator White also stated that he reviewed the image associated with the CyberTip which did appear to be child pornography.  *See id.*

Investigator White explained that based on his training and experience, he was aware that individuals can transfer photographs of child pornography to a cell phone and across the internet. *See id.* at 4.  Likewise, individuals can retrieve, share, and store child pornography on any

17

computer with internet access. *See id.* Investigator White noted that "[d]ata that exists on a computer is particularly resilient to complete deletion." *Id.* at 5. He explained that such data can exist for years, even after a person purports to delete it. *See id.* Investigator White stated that "individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect their collection from discovery, theft, and damage." *Id.* at 8. The search warrant application defined "computer" as that which is defined in New York Penal Law § 156.00, *see id.* at 1, which "means a device" that is able to "store, retrieve or communicate to or from a person, another computer or another device. . . ." N.Y. Penal Law § 156.00(1). Investigator White stated that most individuals who collect child pornography use various "Internet-based vehicles" to communicate with others including "peer-to-peer, torrents, e-mail, bulletin boards, internet relay chat, newsgroups, instant messaging, and other similar vehicles." Dkt. No. 60-4 at 7. Investigator White sought permission to search Defendant and his property, which included his "vehicles on the property." *Id.* at 2. After Defendant was arrested, Investigator White amended the search warrant application to identify Defendant's two specific vehicles by make, model, year, and color that he wished to search. *See* Dkt. No. 60-5 at 2.

First, as to Defendant's cell phones, the Second Circuit has recently stated that "'[a]llegations tending to show that the target used his cell phone in furtherance of criminal conduct suffice to establish probable cause. They are not, however, necessary." *United States v. Silva*, 146 F.4th 183, 190 (2d Cir. 2025). Courts "require *only* a 'fair probability that contraband or evidence of a crime will be found' in the place to be searched." *Id.* (quoting *United States v.*

*Lauria*, 70 F.4th 106, 128 (2d Cir. 2023)) (emphasis added).  "[C]ourts have repeatedly relied on agents' training and experience with electronic devices and the criminal conduct at issue generally — taken together with information known about a specific defendant's conduct — to find the existence of probable cause for the seizure of electronic devices." *United States v. Watson*, No. 23-CR-82, 2023 WL 7300618, *4 (E.D.N.Y. Nov. 6, 2023) (citing *United States v. Babilonia*, 854 F.3d 163, 180-81 (2d Cir. 2017); *United States v. Gatto*, 313 F. Supp. 3d 551, 559 & n.44 (S.D.N.Y. 2018)).

In a case from the Eastern District of New York, the defendant "argue[d] that, in order to seize the Devices, the Fourth Amendment required the government to have had probable cause to believe that the Devices seized were the same ones used during the alleged scheme." *Watson*, 2023 WL 7300618, at *4.  The court rejected the argument, noting that "[n]umerous district courts have . . . require[d] only that agents have probable cause to believe that the defendant used some electronic device in connection with the criminal conduct and that the seized device belonged to the defendant." *Id.* (citing *United States v. Chierchio*, No. 20-CR-306, 2022 WL 523603, *11 (E.D.N.Y. Feb. 22, 2022)); *see also United States v. Hildreth*, No. 21-CR-105, 2024 WL 2176944, *5 (W.D.N.Y. May 15, 2024); *United States v. Zottola*, No. 18-CR-609, 2022 WL 3682222, *3 (E.D.N.Y. Aug. 25, 2022).

"For electronic devices in particular, officers are not required to 'remain at the premises [and] . . . methodically review[ ] each of the items of electronic media' to determine which of the iPhones, iPads, computers, or accessory items contain responsive evidence." *United States v. Yu*, No. 22-CR-208, 2023 WL 4687970, *8 (E.D.N.Y. July 21, 2023), *aff'd sub nom. United States v.*

*Zhang*, 135 F.4th 44 (2d Cir. 2025) (citation omitted).  "Instead, once the warrant affidavit 'established probable cause to the satisfaction of the magistrate that electronic media at the [searched premises] would likely contain evidence . . . of the subject offenses,' the government may seize these devices 'before [their] content is known and then search[ ] at a later time.'"  *Id.* (quoting *Ray*, 541 F. Supp. 3d at 393).

Here, there was probable cause presented through the search warrant applications to believe that cell phones located on Defendant's person or inside his home or vehicles would likely contain evidence of offenses under Article 263.  Investigator White detailed how the image of child pornography that was uploaded to Tumblr was traced to Defendants cell phone number and home addresses that utilized the IP addresses linked to the upload.  *See* Dkt. No. 60-4 at 8. Defendant has not presented any legal authority which requires law enforcement to identify the exact cell phone that contains the alleged material to establish probable cause to seize and search a defendant's electronic devices.  Rather, the caselaw expressly rejects that contention.  *See Watson*, 2023 WL 7300618, at *4; *Chierchio*, 2022 WL 523603, at *11, *Hildreth*, 2024 WL 2176944, at *5, *Zottola*, 2022 WL 3682222, at *3; *Yu*, 2023 WL 4687970, at *8.  The cell phones were also found on Defendant and in his car, establishing his ownership of them.  Accordingly, there was "probable cause to believe that the defendant used some electronic device in connection with the criminal conduct and that the seized device belonged to the defendant."  *Watson*, 2023 WL 7300618, at *4.

Defendant argues that "[t]he original warrant application was based on a CyberTip regarding uploads to Tumblr from a specific account.  Nothing in the warrant application

20

established any connection between the Tumblr upload and the defendant's 2005 Pontiac."  Dkt. No. 60-1 at 13.  Defendant is correct that Investigator White did not state that anyone had seen Defendant uploading child pornography while sitting in his vehicle.  That is not, however, what the probable cause standard requires.  It requires only a "reasonable inference" "based on common sense and experience" that a defendant might keep a cell phone in his vehicle and which would contain evidence of the alleged crime, which in this case was child pornography.  *Singh*, 390 F.3d at 181.  Investigator White knew the vehicle belonged to Defendant as it was the car Defendant drove to turn himself in to police.  *See* Dkt. No. 63 at 17. Investigator White explained in the search warrant application that individuals engaged in the collection of child pornography use cell phones to store and share the data, often try to conceal the evidence, and that the evidence is often maintained for years at a time.  There is probable cause to believe that such evidence would be found on a cell phone which could logically be located inside a home or vehicle.  *See Yu*, 2023 WL 4687970, at *6 ("[T]here is probable cause to believe that evidence of the murder-for-hire crime would be found at Zhang's residence in California, considering that the type of evidence sought (i.e., electronic devices) is likely to be maintained "months or even years after [the crime] occurred"); *cf. United States v. Rodriguez*, No. 20-CR-150, 2023 WL 3243213, *9 (W.D.N.Y. May 3, 2023) ("[E]ven though Rodriguez had moved to 120 Center Avenue only recently and a year had passed since the murder and burglary, there still was reason to believe that those items would be found there").

In sum, the Court concludes there was probable cause to support issuance of the warrants.[3]

---

[3] Defendant's assertion that, because law enforcement's investigation revealed two physical addresses for him, then the warrants lacked probable cause, is meritless.  *See* Dkt. No. 60-1 at 13-

E.      **Good Faith Exception**

The Government argues in its response to Defendant's motion that even if the Court were to hold that the warrants were invalid, law enforcement acted with good faith such that the evidence should not be suppressed.  *See* Dkt. No. 63 at 20-23.  Defendant did not file a reply; therefore, he did not respond to the Government's good-faith argument.

The Court agrees with the Government.  "As the Supreme Court has instructed, '[t]he fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies.'"  *United States v. Maher*, 120 F.4th 297, 320 (2d Cir. 2024) (quoting *Herring v. United States*, 555 U.S. 135, 140 (2009)).  "Rather, exclusion of evidence is properly a court's 'last resort, not [its] first impulse.'  Thus, a court will suppress illegally obtained evidence 'only where it results in appreciable deterrence' and not when an officer acts in an 'objectively reasonable' manner."  *Id.* (quoting *Herring*, 555 U.S. at 141-42).  "That last caveat, the basis for the good faith exception to the exclusionary rule, most commonly applies when officers act 'in objectively reasonable reliance' on a judge's issuance of a search warrant that is, in fact, legally defective."  *Id.* at 320-11 (citing *United States v. Leon*, 468 U.S. 897, 922 (1984).

"The animating principle behind the good-faith exception is that the exclusionary rule aims to 'deter police misconduct rather than to punish the errors of judges and magistrates."

---

14; *see also United States v. Fiore*, No. 2:19-CR-78, 2025 WL 3013167, *2 (D. Vt. Oct. 28, 2025) ("When an IP address is the source of a file with an SHA hash value associated with child pornography, probable cause may be found even without a download"); *United States v. Fama*, 758 F.2d 834, 838 (2d Cir.1985) ("The fact that an innocent explanation may be consistent with the facts alleged, however, does not negate probable cause").

*United States v. Silva*, 146 F.4th 183, 193 (2d Cir. 2025) (quoting *Leon*, 468 U.S. at 916).  "A decision to suppress evidence thus always entails the careful weighing of the 'benefits of deter[ring]' law-enforcement misconduct against the 'substantial social costs' that attend suppressing evidence, including the detrimental impact on the criminal-justice system's 'truth-seeking' function."  *Id.* (quoting *Herring*, 555 U.S. at 141).  "'[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness' when assessing the officer's good faith."  *Id.* (quoting *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011)).  "The Supreme Court has identified four circumstances in which" a court cannot "accept that the government acted in good faith:

> "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable."

*Id.* (quoting *Clark*, 638 F.3d at 100).

Here, the Court has little trouble concluding that the good faith exception prevents suppressions of the evidence in the event the Court was wrong regarding the particularity and probable cause issues.  The Government compares the Second Circuit's application of the good faith exception to the exclusionary rule in *United States v. Rosa*, 626 F.3d 56, 58 (2d Cir. 2010), to this case.  *See* Dkt. No. 63 at 22.  In *Rosa*, the Second Circuit relied on a number of factors to conclude application of the good faith exception was appropriate: (1) "[t]he search warrant application, [the investigator['s] affidavit, and the documents incorporated by the affidavit make clear that the purpose of the search was to obtain evidence of child pornography and child

23

molestation."; (2) "the application and affidavit specifically requested the issuance of a warrant to seize evidence depicting [the defendant]'s sexual exploitation of children"; (3) the investigator "swore to" the magistrate judge "that based on his specialized training, he believed that the electronic items to be searched and seized were likely to reveal evidence of child pornography"; (4) "the affiant and the officer in charge of executing the search warrant and later searching the digital media seized . . . was intimately familiar with the contemplated limits of the search"; and (5) "there is no evidence that the team of officers searched for, or seized, any items that were unrelated to the crimes for which probable cause had been shown, or that [the i]nvestigator [] somehow misled the town justice regarding the facts of the investigation and intended scope of the search." *Rosa*, 626 F.3d at 65.

Those same factors support this Court's conclusion that the good faith exception applies. Investigator White was intimately involved with the case, including by means of acting in an undercover officer capacity and messaging with Defendant as a 14-year-old girl. Investigator White detailed in the warrants and applications the way the image of child pornography was traced to Defendant's phone number and physical addresses. Investigator White explained his knowledge and experience related to crimes of this nature and how evidence is electronically stored and concealed. Perhaps most telling is that Defendant, in his motion, says nothing about an attempt by Investigator White to lie, mislead, or hide information from the town magistrate. This is not a situation where "no reasonably competent officer would have concluded that a warrant should issue." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (citation omitted). Accordingly, the Court finds application of the good faith exception would be appropriate under

the circumstances if the warrants were invalidated and denies Defendant's motion to suppress. *See Dumas*, 2022 WL 678910, at *3 (affirming application of good-faith exception where "[t]he government does not dispute that the warrant was insufficiently particular to satisfy the Fourth Amendment because the warrant allowed officers to seize evidence of 47 different crimes" because "the affiant in the application and was involved in the execution of the search warrant . . . [a]nd the agents seized only Dumas's phone and laptop").

### III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendant's motion to suppress (Dkt. No. 60) is **DENIED**; and the Court further

**ORDERS** that the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  March 17, 2026
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

25